

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 16, 1951

Hon. Max E. Ramsey  
County Attorney  
Andrews County  
Andrews, Texas  

Dear Sir:

Opinion No. V-1316

Re: Time period between elec-
    tions on levying a county tax
    for Farm-to-Market Roads
    or Flood Control.

We summarize the following facts from your letter of September 14, 1951, requesting our opinion on the above captioned matter.

On July 21, 1951, an election was held in Andrews County to determine whether the 30¢ county tax for Farm-to-Market Roads or for Flood Control would be levied. A majority of the qualified property taxpaying voters of the county voting at the election voted against the imposition of the tax.

You desire to be advised as to whether the same proposition could be resubmitted to the voters at this time.

Section 1-a of Article VIII of the Constitution of Texas, which authorizes a county tax for Farm-to-Market Roads or for Flood Control, reads, in part, as follows:

"From and after January 1, 1951, the several counties of the State are authorized to levy ad valorem taxes upon all property within their respective boundaries for county purposes, except the first Three Thousand Dollars ($3,000) value of residential homesteads, not to exceed thirty cents (30¢) on each One Hundred Dollars ($100) valuation, in addition to all other ad valorem taxes authorized by the Constitution of this State, provided the revenue derived therefrom shall be used for construction and maintenance of Farm to Market Roads or for Flood Control, except as herein otherwise provided."

Article 7048a, V.C.S., implements the above quoted provision. Section 7 of Article 7048a reads, in part, as follows:

"Before any county shall levy, assess and col-
lect the tax provided for herein the question shall by
the Commissioners Court of the county be submitted

to a vote of the qualified property taxpaying voters of such county at an election called for that purpose, either on said Commissioners Court's own motion, or upon petition of ten per cent (10%) of the qualified property taxpaying voters of said county as shown by the returns of the last general election."

The balance of this section and Section 8 regulate the ordering and holding of the election. These sections do not require that any fixed period of time must elapse before holding a second election in the event that a first election fails to carry.

In construing analogous statutes in the past, this office has held that no particular period of time need elapse after an election has failed to carry before a second election may be held on the assumption of school district bonded indebtedness (Att'y Gen. Op. O-4511 (1942), construing Article 2786b, V.C.S.), or on consolidation of school districts (Att'y Gen. Op. O-2266 (1940), construing Article 2806, V.C.S.), or on abolishing independent school districts (Att'y Gen. Op. O-2572 (1940), construing Article 2767, V. C.S.). The reasoning of these opinions is that since no intervening time period between elections is fixed by law, such limitation cannot be read into the statutes. We think this reasoning is likewise applicable to Sections 7 and 8 of Article 7048a, and you are therefore advised accordingly.

### SUMMARY

Since Sections 7 and 8 of Article 7048a, V.C.S., do not require a fixed period of time to elapse before holding a second election on the question of levying a county tax for Farm-to-Market Roads or for Flood Control in the event the first election failed to carry, no such limitation may be read into the statute.

Yours very truly,

APPROVED:

W. V. Geppert
Taxation Division

Jesse P. Luton, Jr.
Reviewing Assistant

Everett Hutchinson
Executive Assistant

MMC/mwb

PRICE DANIEL
Attorney General

By Marietta McGregor Creel

Mrs. Marietta McGregor Creel
Assistant